VILLAGE OF LARCHMONT, Respondent, *v.* LARCHMONT PARK, INC., and CHARLES H. TOY, Appellants, Impleaded with DERRICK LANE and LELAND T. LANE, as Executors, etc., of MARY E. T. LANE, Deceased, Defendants.

Second Department, December 13, 1918.

Municipal corporations — nuisance — liability of owner of park within limits of village for failure to properly operate sewage plant — effect of proposed extension of village system to include park — liability of park company and mortgagee of its property for expense of operation of sewage plant by village.

A park company located within the limits of a village had operated a pump to remove sewage from a tank in the park to a sewage system owned and controlled by the village, but through inadequacy of the pump and inefficient operation of it, the sewage was not discharged properly and the pumping station was subsequently operated by the village board of health.   In an action by the village against the park and other defendants having liens upon portions of the park property, evidence *held* to establish that the pumping station as conducted by the park company constituted a nuisance;

That a lien for the expense of operation by the village may attach to all the property of the park company and of one holding a mortgage thereon.

But the judgment should only limit the compulsory operation of the private plant to such time as the new sewer system by the village may properly be extended to the locality now dependent upon the private plant.

The fact that the village supervised the construction of new sewers by the park company did not cast upon it the burden of taking over the pumping station which was the private property of said park company.

The park company having appropriated and adapted the private sewage plant to its purposes cannot at will lay aside the responsibility it had assumed and suffer the sewage to accumulate and overflow with menace to the public health.   Pending the extension of the village system to the park, the legal responsibility of the park company is not lifted.

APPEAL by the defendants, Larchmont Park, Inc., and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 17th day of January, 1918, upon the decision of the court after a trial at the Westchester Special Term.

*I. J. Beaudrias* [*Raeburn W. Jenkins* with him on the brief], for the appellant Larchmont Park, Inc.

*P. F. W. Ruther* [*John A. Garver* with him on the brief], for the appellant Charles H. Toy.

*Clarence De Witt Rogers*, for the respondent.

THOMAS, J.:

The appellant, Larchmont Park, Inc., owns Larchmont Park, except certain lots conveyed by its predecessor in title. The other defendants have liens by mortgage upon portions of the park property. It has been contrived to receive in a tank in the park the sewage from the houses therein, to be pumped to a sewage system owned and controlled by the plaintiff, within the limits of which the park is. The Larchmont Park Company, herein called "appellant," for a period operated the pump to clear the sewage, but a time came when the plaintiff justly insisted that through inadequacy of the pump and inefficient operation of it the sewage was not discharged properly, and after orders by the board of health for correction of the delinquencies had not been obeyed, the board of health operated the plant, and in this action plaintiff has judgment not only for the recovery of the expense thereof, but also that the appellant without limit of time shall operate the pumping station in a manner prescribed, and that in default thereof the plaintiff and its board of health may operate it in similar manner, the expense thereof to be determined by the court and recovery thereof be had of appellant, and that judgment for expenses of operation, in the past, in the future, and costs of this action, shall, execution having been returned unsatisfied, be a " first lien on all the land in Larchmont Park   *   *   *   which stood in the name of " appellant " as owner at the time notice of pendency of this action was

filed in the office of the Clerk of the County of Westchester,"
with leave to either party to apply for further relief.  It is the
appellant's fundamental contention that it is obliged neither
by privity of contract nor by its relation to the pumping station
or the sewers coming to it, to clear the sewage, but rather that
it is the duty of the plaintiff to provide sewage facilities for the
territory; that plaintiff had prepared and caused to be approved
a plan for a system of sewers that includes the locality in
question, and that the streets of the park, where the sewer
pipes are, have been dedicated to, and accepted by, the plain-
tiff, and that the duty of discharging the sewage follows the
control of the streets.  The appellant also criticises both in
power and propriety the plan adopted by the court to abate
the nuisance, and the liens it entails upon appellant's land.
If the facts invite the use of the authority exercised by the
court, it is supplied by statute.  (Public Health Law [Consol.
Laws, chap. 45; Laws of 1909, chap. 49], §§ 21, 31, as
amd. by Laws of 1913, chap. 559; Id. § 32.)  If the system
of sewers adopted by the plaintiff go into effect as to
appellant's land, the judgment should become inoperative
thereafter; and the judgment permits either party to make
application for further relief.  However, pending such execu-
tion of the new sewer system or extension of its present
system, the question arises upon whom falls the duty of
operating the existing pumping station?  The pumping station
is on appellant's land, in which plaintiff or its board of health
by virtue of property interest has no right of entry, although
there is for appellant's default the right of operation for the
protection of public health.  The plant must be operated
properly, or the sewage overflows and passes into Pine brook,
whereby the effluent may be washed upon the banks of the
stream, to the injury of public health.  It is neither rational
nor tolerable that the central place where by arrangement
sewage gathers, should be abandoned, and the material
accumulate and overflow.  The question, then, is who is
responsible for the pumping station as an instrumentality.
McVickar in his lifetime owned land, and in 1904 caused to be
filed in the office of the register of Westchester county a map
entitled " Larchmont Park, at Larchmont, N. Y., property of
Edward McVickar," etc., and in 1906 McVickar caused to be

filed in the same office another " Map of Larchmont Park, Larchmont, N. Y.," etc.  Such maps showed lots, blocks and streets.  McVickar sold some of the lots and, as the court found, " in accordance with said maps."  About 1904, McVickar caused to be built the pumping station, and several sewers pursuant to a " map of sewer system of Larchmont Park."  Under the date of March 21, 1904, McVickar made an agreement with the plaintiff.  Its object was to obtain the right to lay a sewer in " Boston Post Road and also across Larchmont Avenue into Addison Avenue to connect with an existing sewer in said Addison Avenue for the purpose of discharging sewage by pumping from said tract of land."  The plaintiff owned the streets named, but it was necessary for McVickar, in aid of his property, to construct sewers in the Boston Post road and across Larchmont avenue, and he undertook all the expense of doing the work " in accordance with the plans and specifications approved by the Board of Health of the State  *  *  *  substantially in accordance with the plans exhibited to and approved by the Trustees of the " plaintiff " on October 5th, 1903," and in accordance with the direction of the plaintiff's engineer.  The agreement involved the pumping of the sewage from the sewer to be laid in the Boston Post road into and from the pumping works, which it was stipulated should be " without charge and cost " to the plaintiff " as long as the same shall be in use and operation," and it was further stipulated that the sewers to be laid in such streets should be the property of the plaintiff, who agreed not to make the usual charge for sewer connection with the sewer along the northerly side of the Boston Post road.  Hence, it appears that McVickar established the pumping station, and the sewers that connected with it, and specifically agreed to clear the sewage coming from the Boston Post road.  After McVickar's death in 1910, his sole legatee conveyed the park, except the lots sold by McVickar, to the appellant, who assumed the mortgages owned by the other defendants herein.  The appellant after such conveyance owned the pumping station and the land on which it was, and operated the pump for the discharge of the sewage conveyed to it by McVickar, and for the sewer district which it laid out for the service of the lots which it sold on which houses were built,

so that at present some seventy-five houses are related to the sewer system, which was built or utilized by the appellant, but none of them is owned by appellant. The lots sold by appellant are related to maps of several portions of the park filed in the register's office by the appellant. Before beginning the construction of new sewers, the appellant sought but did not receive from plaintiff approval of the plan concerning which appellant had correspondence with the State Department of Health. Appellant's representative at that time testified concerning an interview with plaintiff's trustees: " They told me they would not have anything to do with it, to go ahead and do what I liked," but appellant was later informed by letter under date of September 11, 1911, that all work of construction upon private property should be in accordance with the requirements of the village engineer, whereupon appellant's agent employed and paid Van Etten, who was the village engineer, and who thenceforth, as appellant's evidence shows, had charge of the construction, while the engineer testifies that he never inspected as the plaintiff's engineer. Inasmuch as the plaintiff demanded that the construction meet the requirements of its engineer, it would be a consistent assertion of authority to superintend the construction. Such action on the part of the plaintiff did not cast upon it the burden of taking over the pumping station, which was the appellant's private property. The plaintiff's function and duty was to guard against a construction of sewers, even on private property, that would be detrimental to the public health, and it would have failed in such duty had it allowed sewers to be constructed that would allow the escape of sewage elements. The question whether the appellant by purchasing the park took over the burden of operating the pump, must be considered in connection with the fact that it sold lots whereon houses would be built privileged to discharge sewage that would reach the pump. What came to it was appropriated for a beneficial purpose, and having adapted the plant to its purposes it could not at will lay aside the responsibility it had assumed, and suffer the sewage to accumulate and overflow with menace to the public health. It is true that the sewers established by McVickar, and serving houses that appellant never owned, would come to the pumping station, and

that sewage at some time in the future from the southerly side of the Boston Post road may commingle with the sewage from property in the park. But the appellant knew when it appropriated the system to what burden it exposed it, and that the sources of the sewage could not be differentiated in clearing the central tanks. The plaintiff has a new plan which, if executed, will supersede the private system in the park, but pending its extension to the park, the legal responsibility of the appellant is not lifted. On its land is the central operative part of a sewer system, which the appellant has devoted to the development of its enterprise. While inoperative, or improperly operated, a nuisance results. It would be unjust to permit the appellant, after using the plant for development, to withdraw from it and thrust upon the plaintiff the service of providing sewer facilities for a region that appellant assumed to exploit by means of such sewer plant. McVickar wished the sewers and pump as a facility for money-making, and agreed to relieve the plaintiff of the cost of the pumping " as long as the same shall be in use and operation." It was not contemplated that he could abandon " use and operation " without providing other means for the proper discharge of sewage. The appellant had full view of its relation to the arrangement, and the consequences of declining or accepting the use of the plant. The proper development of its land scheme appeared to demand assumption of the sewer system, and what it has chosen it should pursue. But it is said that the plaintiff has accepted the streets, and it is reasoned, I assume, that it owns also the sewers in the streets. But if that were true, as it is not, it does not own the pumping station, nor may the house owners be deprived of their right to the disposition of their sewage through the pumping station. However, there has been no acceptance of the streets because there has been no dedication of the streets. In the conveyances of lots by the appellant there is this expressed reservation: " The streets and avenues on the map aforesaid are not dedicated to the public or conveyed to the grantee herein; ownership thereof remaining in Larchmont Park, Incorporated, but they shall remain open for the use in common of the various owners of said plots or parts thereof." The record shows such a deed dated Septem-

ber 4, 1917, and there are others of differing dates. The appellant presents alleged acts indicating. acceptance, such as the resolution of plaintiff's trustees for the installation of electric lights and fire hydrants in the park; the employment of a special policeman to patrol the park; the installation of a police box in one of the streets; an ordinance regulating sewer connections; the installment in 1916 of crosswalks at the request of the Larchmont Park Welfare Association; the oiling and resurfacing with bluestone of some of the streets; the instruction by the trustees to make a new tracing on a village map showing new streets in the new developments of property, including, among others, Larchmont Park; the reference by the trustees to the committee on streets of a suggestion that there be an inspection of roads in the park injured by the use of them for the purpose of detour; the request that the water company install a fire hydrant; the interference by the chairman of the committee on sewers with the construction of a sewer in Larchmont Park. A time, however, came when there was negotiation for the taking over of the streets by the plaintiff. The minutes of the trustees under date of October 18, 1915, show a recital, " Whereas, the principal streets of Larchmont Park are about to be taken over by the Village and a deed thereof was tendered to the Village in June, 1915, and, whereas, the acceptance of said conveyance has been delayed owing to certain necessary changes in the sewers therein, which changes in the sewers have been agreed to and are about to be made, and whereas, the Village intends to accept said streets when said changes are made, Resolved, that the Village assume the acceptance of lighting said streets from the beginning of the current fiscal year. Further resolved, that the Clerk be instructed to notify the Westchester Lighting Company, of the board's action in assuming the acceptance of lighting of Larchmont Park streets upon the terms of the contract for the lighting of streets throughout the Village." The deed referred to in the recital was transmitted in a letter, which stated that the release from the general mortgages had been executed. All the acts above enumerated, except that of the letter of the chairman of the committee on sewers, antedated the resolution of October 18, 1915, so that it is quite certain

that neither party at the time of such resolution understood that the streets had become the property of the plaintiff by dedication and acceptance. The evidence is sufficient to justify the finding that the pumping station as finally conducted by the appellant was a nuisance. The court has not directed an extension of the plant nor an increase of its capacities, but constrains the proper use of the pumping station in accordance with its power. The provision that a lien for the expenses recovered shall attach to all the appellant's property is proper. The pumping station is a part of the appellant's holding and appropriated to the use of each and every part of it. It is not practicable, even if it be possible, to segregate any part of the parcel of land and confine to it the pump and the purpose for which the appellant has appropriated it. There is, however, an indefiniteness in the decree which may be corrected. McVickar undertook to provide sewer facilities for the park on account of the necessities of the case, but he did not exempt his property from the privileges of a sewer system that in the future should be provided for the whole municipality and extended to its several parts. The appellant is in the same condition. While it is responsible for the situation which McVickar created and which it has furthered, yet if the plan for a general sewer system for the village should go into effect, the appellant is not precluded from having and demanding such rights with reference thereto as it would have, had not the present sewer system in the park been established. The judgment, therefore, should be amended so as to limit the compulsory operation of the present pump to such time as the new sewer system may properly be extended to the locality now dependent upon the appellant's private plant. The mortgagee Toy, with the appellant Larchmont Park, Inc., is enjoined against permitting the accumulation of sewage. There is no injury in this so long as he refrains from exercising dominion over the property, but his mortgage is subject to the exercise of the power of the board of health to execute the laws, and as the Public Health Law, section 32, states that a judgment for the recovery of expenses "shall be a first lien upon such premises, having preference over all other

liens and incumbrances whatever," the appellant Toy cannot justly demand exemption.

The judgment, modified in the matter of its continuance as above suggested, is affirmed, without costs.

RICH, BLACKMAR and JAYCOX, JJ., concurred; JENKS, P. J., not voting.

Judgment modified in accordance with opinion, and as thus modified affirmed, without costs. Order to be settled before Mr. Justice Thomas.