EDNA BARR and Others, Plaintiffs, *v.* ALGON REALTY CORPORATION and Others, Defendants.

DAVID A. FISHER and Others, Plaintiffs, *v.* MANHATTAN BEACH ESTATES, INC., and Others, Defendants.

Supreme Court, Special Term, Kings County, February 14, 1938.

*William West Ulman,* for the plaintiffs Edna Barr and others.
*Hetkin, Rubin & Hetkin,* for the plaintiffs David A. Fisher and others.

*Henry Hetkin, Herbert G. McLear, Max E. Greenberg* and *Henry Greenberg* of counsel, for all the plaintiffs.

*Sayers Brothers* [*H. Schieffelin Sayers* and *William Harvey Smith* of counsel], for the defendants Manhattan Beach Estates, Inc., and Joseph P. Day, Inc.

*Bachrach, Bachrach & Bisgyer* [*Herman S. Bachrach* and *S. S. Bisgyer* of counsel], for the defendants Algon Realty Corporation, Louis C. Kaye, Herman Kishner and Burt Bernheim.

*Milton Sarner,* for the defendant Milmor Construction Corporation.

*Rollin H. Reid, Assistant Corporation Counsel,* for the defendant City of New York.

KADIEN, J.. Shorn of all collateral matter, the ultimate object of these actions, which were tried together, is to restrict the development of Manhattan Beach, Brooklyn, N. Y., to a private home community, by preventing any contemplated multiple dwelling or apartment house from using the present sewer system.

The plaintiffs' right to relief is predicated upon the premise that the sewer system in Manhattan Beach must be exclusively used by private dwellings by reason of an easement in the entire system, which was given to each property owner in his deed burdened only with similar easements in every other owner in such development for similar use, and that the construction of an apartment house so as to connect with the sewer system will constitute a nuisance.

The defendant Manhattan Beach Estates, Inc., was the developer of Manhattan Beach, from which the present owners, by mesne conveyances, derive their respective titles. This defendant filed maps in the office of the register of Kings county dividing the tract into blocks of 208 feet by 800 feet, into lots of approximately 20 feet by 100 feet, and strips 8 feet in width running through the center of the blocks and perpendicularly to Hampton avenue and Oriental boulevard. In and upon these 8-foot strips Manhattan Beach Estates, Inc., installed sewer lateral pipes running into a sewer trunk line in Hampton avenue, which in turn was connected with a sewer pumping station constructed upon the southwest corner of West End and Hampton avenues.

The deeds of conveyance from Manhattan Beach Estates, Inc., contained certain restrictive covenants, limiting the use of the property to private homes. Such covenants were " real covenants running with the land " and were binding until January 1, 1935, when they terminated.

The clause upon which it is claimed the easement as to the sewers was created is expressed in two forms, which differ immaterially. The clause germane to the determination of the instant actions, however, and which the court finds to be typical, reads as follows:

" WHEREAS, in the said deed from Manhattan Beach Estates to the Manhattan Beach Realty Corporation, the former retained title to a strip of land eight (8) feet in width, running through the center of the blocks in which the lots thereby conveyed are situated, and at right angles with Hampton Avenue and Oriental Boulevard, for the accommodation of sewers, water pipes, gas pipes, electric wires and other public utilities, the right was granted to the party of the first part hereto, its successors, assigns and grantees to make and maintain connections with all such sewers, pipes, wires and utilities, and to maintain a lawn upon that portion of said strip, to the center thereof, which adjoins the lots thereby conveyed, subject to the right of said Manhattan Beach Estates, or its assigns, to enter upon the same for the purposes of repairs, renewals or additions to said utilities.

" *Now, Therefore*, the party of the first part grants to the party of the second part, as to the property hereby conveyed, the same rights and privileges so granted to it, but also subject to the same conditions."

On or about April 14, 1917, the streets, avenues and boulevards in the section of Manhattan Beach under consideration were ceded and conveyed to the city of New York, and the title to the sewers in said streets became vested in the city.

On December 20, 1926, all the sewers contained in the eight-foot strips and the sewer disposal station were likewise conveyed to the city of New York.

Thereafter Manhattan Beach Estates from time to time conveyed title to portions of some of said eight-foot strips to the center line thereof to adjoining owners of property.

At or about the time of the expiration of the restrictive covenants, the locality involved was zoned, under the New York City Amended Building Zone Resolution, as an " F " area district, which is the highest restricted zone under the law. In this zone, however, multiple dwellings, or apartment houses may be erected.

The Algon Realty Corporation is a defendant in both actions. It obtained a building permit to erect an apartment house within the area involved, as had also the Milmor Construction Corporation, which is a defendant in the Fisher action only. Both of these corporations have acquired title to portions of the eight-foot strips adjoining their respective properties.

The plaintiffs in the Barr action appealed to the board of standards and appeals of the city of New York from the decision of the commissioner of buildings approving plans for the erection of the apartment house by the Algon Realty Corporation, and for the revocation of the permit issued (232–37–A). The principal grounds of such appeal were (1) that the connecting of the proposed apartment house to the sewer was contrary to the Multiple Dwelling Law, since the sewer could not be considered as meeting the requirements of a " street " sewer within the meaning of that law; and (2) that the plans indicated that an excessive area of the plot was to be occupied by the building, since the surface of the " 8 foot strip " which had been acquired by the Algon Realty Corporation, was improperly considered as part of the required open space, in calculating the permitted coverage of the entire plot.

The board unanimously denied the appeal to revoke the permit. That decision still stands, and a review thereof in certiorari is pending. The significant part of the report of the committee of inspection of the board of standards and appeals, which is incorporated in the resolution denying the appeal, reads as follows (Defendants' Exhibit I):

" Until a few years ago this general area was subject to a private restriction permitting one family houses only on plots having frontages of sixty feet. All plots were subject to the eight foot sewer and service pipe easement which was established in each block, providing a net work of services for the entire area. The surface of the easement was permitted to be grassed over but not built upon and available at all times for repair and inspection. The restriction as to private houses was not renewed but the easement appears to be perpetual and the City has taken over the maintenance of the sewer and water lines. In view of these facts, the sewer line can be properly considered a ' street ' sewer as required by the Multiple Dwelling Law, the intent of which was to preclude the connection of a multiple dwelling to a private cesspool or septic tank, having no connection with a general sewage system connected to a street disposal line. This sewer is the only one available and has been approved by the Dept. of Sewers.

" There may be a question of actual ownership of the easement through this plot. There appears no doubt that the title of record is with this owner. He is permitted to use the surface. This easement is not an alley or a right of way over which anyone has a right to pass. If it were such, there might be a basis for determining that the owner did not have one plot but instead two plots, as much separated as if a City street intervened. But that is not the case. The surface of this easement can be counted just as much

for required open spaces and in calculating permitted coverage as any other part of the plot.

"Contrary to a prevalent impression, multiple dwellings can be erected in an F·area district. If it is a mistake to permit them the fault is with the zoning resolution in not being more restrictive. As the law stands in F districts, inroads of multi-family dwellings cannot be prevented without a supplementary private restriction which unhappily, in this instance, has lapsed." (Bulletin of the Board of Standards and Appeals, City of New York, June 15, 1937, vol. XXII, No. 24, pp. 724, 725.)

The position of the plaintiffs with respect to the issues involved herein is epitomized by counsel's statement on page 9 of the brief submitted in behalf of the plaintiffs in the *Fisher* case, where it is stated: "We do not claim that the restrictions have continued in effect, but we do claim that the restrictions and the circumstances under which the land was sold to the respective grantees place a limitation upon the type of building that can be connected to the sewer system, even after the expiration of the restrictions."

It is obvious that the original purpose of the eight-foot strips was to enable the grantees of lots immediately adjoining same to connect their properties with the sewers, pipes, wires and other utilities, with the further right to maintain a lawn upon that portion of said strip to the center line thereof, which adjoins the grantee's plot. This was subject to the right of Manhattan Beach Estates or its assigns to enter upon such lawn "for the purposes of repairs, renewals or additions to said utilities."

The court is unable to agree with the construction urged by the plaintiffs, that an *easement* in the *entire* sewer system and in *all* of the eight-foot strips was created for the benefit of each grantee. In the opinion of the court, each grantee was given the *right* merely to connect his property with the sewer system of the community, on the strip immediately adjoining his property, and not at any other point. The words "Whereas, in the said deed from Manhattan Beach Estates to the Manhattan Beach Realty Corporation, the former retained title to a strip of land 8 feet in width, etc.," were words of recital only, which identified the strips. They did not create or settle a trust therein for the benefit of any grantee or his assigns. The language used contains no commitment by the grantor to personally and perpetually maintain the sewers and the eight-foot strips connecting the various properties therewith. The very words "subject to the right of said Manhattan Beach Estates *or its assigns*," negative any intention on the part of the grantor to personally and perpetually maintain the same.

Moreover, this clause cannot be taken bodily from the deed and construed without reference to the other portions thereof. The right of the grantees to the use of the strips adjoining their property, and the sewer system, was limited and burdened by the restrictive covenants, that is to say, the character of the buildings with which the sewer system could be connected was defined by these restrictions. The grantees had the right thereunder to connect private dwellings only, and, now that these restrictions are no longer in force, no limitation exists upon the kind of building with which the sewer system may be connected, other than as restricted by the Municipal Zoning Law.

The situation presented at bar is much stronger than that which was involved in *Schultheis* v. *Wohlleb* (231 App. Div. 851) and in *Carney* v. *Richell Realty Corp.* (Id. 845; affd., 256 N. Y. 667). There the restrictive covenants *had not expired*, yet the court refused to enforce them because it found, upon the evidence, that the character of the property in the immediate neighborhood had so changed that the restrictions and covenants limiting the use thereof to residential purposes were no longer enforcible.

In the instant case there is not only evidence of a change of the character of the neighborhood, *but the restrictive covenants have by their terms come to an end.* By that event the *right* of the owner to connect his property with the sewer system has not in any way been affected. He had the right to connect his building with the sewer system then, he has the right to do so now; but whereas formerly the kind of building he could connect was limited by the restrictions in the deed, the kind of building he can connect today is limited only by the zoning restrictions of the municipality, which permit the erection of apartment houses under the Multiple Dwelling Law.

The future of Manhattan Beach as a community of private homes, and the possible desire of owners of vacant land at the beach to build private homes, is not material to the determination of the issue. The owners purchased their property benefited and burdened by restrictive covenants expiring on January 1, 1935, and may not complain now that these restrictions have by the terms thereof lapsed; nor is the argument available that the majority of the property owners wish to continue Manhattan Beach as a community of private homes. All the property owners have the right to use their property now in the same manner as the owners of the contemplated apartment houses propose.

As said by Mr. Justice LAZANSKY in *Blank* v. *Evans* (195 N. Y. Supp. 709, 711; affd., 205 App. Div. 897; affd., 237 N. Y. 558): " What he [defendant] proposes to do does no more violence to the

plan than what they [plaintiffs] have the right to do. Besides, Hall and Rowe and his company, which at this time only controlled 50 feet, agreed that all restrictions should come to an end May 23, 1923. At that time these plaintiffs and all others who hold through Hall may use their property as they please as to one another. That the conditions indicate they will not is beside the question. They have the power. Equity should not interfere under such circumstances."

Evidence was adduced at the trial concerning the capacity of the sewer system. It was testified for the plaintiffs, on the one hand, that the sewer system was not suitable for multiple dwellings; that the drainage pipes of three or four apartment houses, if allowed to be constructed, would not clog the system but might seriously impair its margin of safety; that in the event twenty such apartment houses were erected, the sewer system would be clogged entirely. On the other hand, on behalf of the defendants it was testified that the bathing park at Manhattan Beach was connected with the sewer system; that at times upward of 5,000 people used the said bathing park, thereby placing an extraordinary burden upon the sewer facilities, without any harmful results.

Be that as it may, the city of New York has the legal title to the fully paid sewer system and the sewage disposal plant. It has connected that sewer system with its Sheepshead Bay public sewer; it has assumed the maintenance and operation thereof, and has the sole authority to issue permits for connections therewith. Upon the taking over of the sewer system by the city, Manhattan Beach Estates was no longer vested with any authority or burdened with any obligation concerning the same. (*Village of Larchmont* v. *Larchmont Park, Inc.*, 185 App. Div. 330.)

Under *sections 383 and 395 of the Greater New York Charter*, the municipal authorities have exclusive charge of the said sewer system. "It is neither the right nor the duty of the court to substitute its judgment for that of the persons charged with the responsibility for the conduct of public affairs. The responsibility of the court begins and its duty is performed when it prevents the commission, by a private official, of any threatened act which is either in violation of law or without warrant of law." (Per DOWLING, J., *Schieffelin* v. *City of New York*, 65 Misc. 609, 611.)

However, in the instant cases it appears that the city authorities have *refused to issue permits* to connect the sewer system in Manhattan Beach with apartment houses now contemplated. For this court to grant an injunction restraining the city from issuing such permits, would be tantamount to a direction to the city

authorities to continue *indefinitely* their *present negative action of denying such permits.* This may not be done.

There are no easements controlling the situation. It is entirely within the province of the city authorities to determine whether the sewer system as it now exists in Manhattan Beach is adequate for use by apartment houses, and to act accordingly. Such action may, in a specific instance, be presented to the courts for direct review, but is not presently before this court.

Accordingly, judgment is granted to the defendants dismissing the plaintiffs' complaints in both actions, but without costs.

Submit judgments in accordance, upon notice.